# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| PROXI HEALTHCARE STAFFING LLC d/b/a PROXI DENTAL STAFFING | § § § § | |
| | § | CIVIL ACTION NO. 3:22-CV-2553-S |
| v. | § § | |
| CURATIVE TALENT, LLC | § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Plaintiff Proxi Healthcare Staffing LLC d/b/a Proxi Dental Staffing's Motion for Leave to File Its Third Amended Complaint ("Motion") [ECF No. 31]. Having reviewed and considered the Motion, Defendant Curative Talent, LLC's Response to Plaintiff's Motion for Leave to File Its Third Amended Complaint ("Response") [ECF No. 37], Plaintiff's Reply in Support of Its Motion for Leave to File Its Third Amended Complaint ("Reply") [ECF No. 46], and the applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

## I. BACKGROUND

On December 13, 2021, Plaintiff Proxi Healthcare Staffing LLC d/b/a Proxi Dental Staffing and either Defendant Curative Talent, LLC, or Curative's parent company, Doximity, Inc., executed a Letter of Intent related to Proxi's acquisition of Curative's "Dentistry Service Line." Pl.'s Second Am. Pet. ("Petition") [ECF No. 18] ¶ 7; Pl.'s Third Am. Compl. [ECF No. 31-1] ¶ 28. The Dentistry Service Line "consisted of 'locum tenens' (temporary) dentistry staffing contracts, permanent placement search contracts related to dentistry, and executive search contracts related to dentistry." Pet. ¶ 7. Following execution of the Letter of Intent, Proxi worked

with Curative, Doximity, and Curative's legal counsel to review the business, perform due diligence, and finalize a purchase agreement. *Id.*

On February 4, 2022, Proxi and Curative entered into the Asset and Purchase Agreement ("Agreement"), pursuant to which Proxi agreed to purchase the Dentistry Service Line for $850,000.[1] *Id.* Proxi agreed to pay this amount based on representations made through Salesforce and NetSuite reports, other Salesforce records related to Curative's dentistry business, and verbal assurances regarding dental locum tenens gross profits. *Id.* ¶ 8. However, Curative allegedly failed to disclose that one of its most profitable locum tenens dentists ("Dr. P") had been cancelled from 54 out of 64 of the shifts he was supposed to work between February 7, 2022, and May 20, 2022. *Id.* ¶ 9. The client to which Dr. P was assigned sent Curative a cancellation notice for Dr. P's shifts the day after the parties executed the Letter of Intent. *Id.* The cancelled shifts remained in "confirmed" status in Curative's Salesforce system. *Id.* And Curative represented that Dr. P was still confirmed for the shifts in Section 1.4(g) of the Agreement. *Id.*; *see also* Pl.'s Third Am. Compl., Ex. A ("Agreement") [ECF No. 31-1] ¶ 1.4(g). Proxi did not learn about the cancellations until February 22, 2022. Pet. ¶ 9.

Proxi alleges that Curative also withheld a dentistry executive search from the sale. *Id.* ¶ 11. The contract value of the search was $50,000. *Id.* Of that $50,000, $15,000 belonged to Curative, and the remaining $35,000 was to transfer to Proxi. *Id.* Curative allegedly hid the search from Proxi prior to the sale by mislabeling it in Salesforce. *Id.* According to Proxi, Curative "intentionally concealed the nature of this search in their Salesforce system with the knowledge that Proxi was combing through [Salesforce] to pull out all the dentistry contracts as stipulated by

---

[1] Although the Agreement lists Curative as the Seller, Proxi notes that Doximity filed a Tax Form 8594 (Asset Acquisition Statement) listing Doximity as the entity that sold the assets to Proxi. Mot. 3.

2

the Agreement." *Id.* Proxi did not learn about this search until hours after it signed the Agreement and wired the purchase price to Curative. *Id.* ¶ 12.

Proxi claims that if it had known about the shift cancellations and the withheld search, it would have offered $601,849 for the Dentistry Service Line instead of $850,000. *Id.* ¶ 13. Proxi allegedly also suffered opportunity costs in the amount of $79,749. *Id.* As a result, Proxi filed suit against Curative on October 5, 2022. *See* Pl.'s Original Pet. [ECF No. 1-1]. Proxi has since filed its First Amended Petition [ECF No. 6] and Second Amended Petition [ECF No. 18]. Proxi did not seek to add claims against Doximity through prior amendments.

Curative filed its Rule 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 21]. In response, Proxi filed the Motion, in which it seeks leave to amend its Complaint a third time. Mot. 3. The proposed Third Amended Complaint [ECF No. 31-1] adds Doximity as a defendant and includes more factual detail than the Second Amended Petition. In the proposed Third Amended Complaint, Proxi asserts claims for negligent misrepresentation, breach of contract, fraudulent inducement, and alter ego against both Defendants. Third Am. Compl. ¶¶ 73-103.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(1) allows a party to amend its pleading once as a matter of course. After that, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "The court should freely give leave [to amend] when justice so requires." *Id.* While granting leave to amend is "by no means automatic," *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (citation omitted), "pleading is [not] a game of skill in which one misstep by counsel may be decisive to the outcome," *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 230 (5th Cir. 1997) (citation omitted). The Court considers five matters

in determining whether to grant leave to amend: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment. *SGIC Strategic Glob. Inv. Cap., Inc. v. Burger King Eur. GmbH*, 839 F.3d 422, 428 (5th Cir. 2016) (citation omitted).

### III. ANALYSIS

Curative opposes Proxi's Motion only on the grounds that the proposed amendment would be futile. An amendment is futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (citation omitted). To determine futility, courts "apply the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (internal quotation marks and citation omitted). To pass muster under Rule 12(b)(6), a plaintiff must plead enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). This "facial plausibility" standard requires a plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted).

#### A. Claims Against Doximity

In the Third Amended Complaint, Proxi adds negligent misrepresentation, breach of contract, and fraudulent inducement claims against Doximity both directly and as the alter ego of Curative. Third Am. Compl. ¶¶ 73-103. Curative argues that the Court should not grant Proxi leave

to amend its Complaint to add these claims because Doximity is not subject to the Court's personal jurisdiction and because Proxi fails to state a claim against Doximity. Resp. 1. The Court declines to reach the issue of personal jurisdiction at this juncture but agrees that Proxi does not plausibly allege claims against Doximity.

*i. Lack of Personal Jurisdiction*

Curative first argues that the Court lacks personal jurisdiction over Doximity. *Id.* at 2. But personal jurisdiction "is a personal defense that can be waived. As such, the defense ordinarily cannot be raised by anyone but the defendant himself." *Ntakirutimana v. Cmty. Health Sys. Inc.*, No. L-09-114, 2012 WL 12894294, at *2 (S.D. Tex. Dec. 20, 2012) (citation omitted); *see also Zufelt v. Isuzu Motors Am., L.C.C.*, 727 F. Supp. 2d 1117, 1131 (D.N.M. 2009) ("The personal-jurisdiction analysis is fact-intensive. Typically, when there is a motion to dismiss for lack of personal jurisdiction, there are affidavits and other evidence." (internal citation omitted)). The Court will consider any challenges to personal jurisdiction if and when they are raised by the party contesting personal jurisdiction.

*ii. Failure to State a Claim*

The remainder of Curative's arguments relate to whether the proposed Third Amended Complaint states a claim against Doximity. The Court turns first to Proxi's cause of action for alter ego liability. Third Am. Compl. ¶¶ 102-03. As an initial matter, "[a]lter ego is not a claim or independent cause of action—it is a remedy to enforce a claimed substantive right." *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.*, No. 3:10-CV-1842-G, 2012 WL 3100778, at *16 (N.D. Tex. July 31, 2012) (citing, among other sources, *W. Oil & Gas JV, Inc. v. Griffiths*, 91 F. App'x 901, 903-04 (5th Cir. 2003)). Therefore, to the extent Proxi intends to assert alter ego as a cause

5

of action rather than as a basis for Doximity's liability for Curative's acts, the Court concludes that it would be futile to allow Proxi to amend its Complaint to add such a claim.

The Court now turns to Proxi's general allegation that Doximity is the alter ego of Curative, as this allegation forms the basis of many of Proxi's arguments in support of its proposed amendment. Concluding that Proxi does not adequately allege that Doximity is liable as Curative's alter ego, the Court considers whether Proxi states claims directly against Doximity.

a. Alter Ego

"In diversity cases, federal district courts apply the choice-of-law rules of the forum state." *Safeco Ins. Co. of Ind. v. Nidec Motor Corp.*, No. 4:20-CV-00183-ALM, 2021 WL 134099, at *4 (E.D. Tex. Jan. 14, 2021) (citation omitted). "Under Texas's choice-of-law rules, whether a corporation, LLC, or individual may be held liable pursuant to a veil-piercing theory is determined by the law of the state in which the entity is organized." *Ogbonna v. USPLabs, LLC*, No. EP-13-CV-347-KC, 2014 WL 2592097, at *5 (W.D. Tex. June 10, 2014) (citing, among other sources, *Alberto v. Diversified Grp., Inc.*, 55 F.3d 201, 203 (5th Cir. 1995)); *see also Greathouse v. Cap. Plus Fin. LLC*, No. 4:22-CV-0686-P, 2023 WL 5759250, at *11 (N.D. Tex. Sept. 6, 2023) ("Where the claim seeks to hold a parent company liable for the obligations of a subsidiary, the subsidiary's state of incorporation provides the applicable law." (citation omitted)). Proxi's pleadings regarding Curative's state of organization have been inconsistent; however, per the Agreement, Curative is a Texas limited liability company. Agreement 1.[2] Therefore, Texas alter ego law applies.[3]

---

[2] As stated above, the Court analyzes futility under the Rule 12(b)(6) legal sufficiency standard. When conducting a Rule 12(b)(6) analysis, the Court may consider "any documents attached to the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted). Therefore, the Court considers the Agreement, which Proxi attached as Exhibit A to its proposed Third Amended Complaint.

[3] The Court notes that neither party briefed the issue of which state's law applies. And "cases are unclear as to which corporation's law to apply." *Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 195 (S.D.

6

"Under Texas law the alter ego doctrine allows the imposition of liability on a corporation for the acts of another corporation when the subject corporation is organized or operated as a mere tool or business conduit." *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593 (5th Cir. 1999) (citation omitted). "Disregarding the corporate structure involves two considerations." *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008). The first is the relationship between the two entities. *Id.* In analyzing this prong, courts consider factors including "common employees; common offices; centralized accounting; payment of wages by one corporation to another corporation's employees; common business name; services rendered by the employees of one corporation on behalf of another corporation; undocumented transfers of funds between corporations; and unclear allocation of profits and losses between corporations." *Paramount Petroleum Corp. v. Taylor Rental Ctr.*, 712 S.W.2d 534, 536 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (citation omitted), *abrogated on other grounds by SSP Partners*, 275 S.W.3d 444. The second is "whether the entities' use of limited liability was illegitimate." *SSP Partners*, 275 S.W.3d at 455. This consideration requires allegations that "the corporate form has been used as part of a basically unfair device to achieve an inequitable result," such as to "perpetuate a fraud, evade an existing obligation, achieve or perpetuate a monopoly, circumvent a statute, protect a crime, or justify wrong." *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 424 (5th Cir. 2014) (quoting *SSP Partners*, 275 S.W.3d at 451).

Turning first to the relationship between Doximity and Curative, Proxi alleges: (1) Doximity and Curative share certain shareholders, officers, directors, and/or employees[4];

---

Tex. 2008). However, even if Delaware law applied, as Delaware is Doximity's state of incorporation, the Court would reach the same conclusion. Delaware law requires a plaintiff pleading alter ego to allege "some fraud, injustice, or inequity in the use of the corporate form." *Safeco*, 2021 WL 134099, at *4 (citation omitted). For the reasons stated below, Proxi does not adequately allege fraud, injustice, or inequity.

[4] The only overlapping employee identified in the Third Amended Complaint is David Coffman, "VP of Finance at both Doximity and Curative." Third Am. Compl. ¶ 36.

7

(2) Doximity and Curative share the same three managing members; (3) Doximity provides Curative's operating capital; (4) Doximity's officers and directors may determine Curative's policies; (5) Doximity and Curative have centralized accounting; (6) Doximity and Curative have a centralized human resources department; (7) Doximity employees "were integral to the negotiation and finalizing of" the Agreement; (8) Doximity pays stock options to Curative employees; (9) Curative has rendered unidentified "[s]ervices" on Doximity's behalf; (10) Doximity leases the building out of which Curative operates; and (11) Doximity represented itself as the seller of the Dentistry Service Line on a tax form. Third Am. Compl. ¶¶ 2, 102. These allegations, many of which have no factual support, do not adequately demonstrate the degree of assimilation necessary for alter ego liability. *See, e.g.*, *USHealth Grp., Inc. v. South*, 636 F. App'x 194, 202 (5th Cir. 2015) ("Under [Texas] law, . . . the corporation must have exercised such control over the subsidiary that it is clear the two entities have abandoned their separate corporate identities." (citation omitted)).

But even if Proxi adequately alleged that the relationship between Doximity and Curative justifies holding Doximity liable, the parties did not meaningfully brief the issue of illegitimate use of limited liability. Proxi alleges in conclusory fashion that "Curative is simply a mere business conduit for Doximity" and that "[t]he separate identities of these entities must be disregarded . . . to prevent use of the corporate fiction as an unfair device to inflict an injustice on Proxi, and to avoid any responsibility for the damages sustained by Proxi herein." Third Am. Compl. ¶ 102. The only factual allegations Proxi appears to use to support its argument are the assertions that Doximity was involved in the alleged misconduct and that Doximity filed a tax form listing itself as the seller of the Dentistry Service Line. Without more, these allegations are insufficient. Therefore, the Court concludes that Proxi has not plausibly alleged that Doximity is the alter ego

of Curative, and the Court will analyze only whether Proxi's proposed Third Amended Complaint states claims against Doximity directly.

### b. Breach of Contract and Fraudulent Inducement

"Texas law requires privity of contract to assert a breach of contract claim, meaning a non-party to a contract typically cannot be sued for breach of that contract." *Fid. Funding Bus. Credit, LTD v. Republic Bus. Credit LLC*, No. 3:16-CV-2492-B, 2017 WL 4923880, at *2 (N.D. Tex. Oct. 30, 2017) (citing *Chico Auto Parts & Serv., Inc. v. Crockett*, 512 S.W.3d 560, 569 (Tex. App.—El Paso 2017, pet. denied)). However, "traditional principles of state law . . . allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 531 (5th Cir. 2019) (internal quotation marks and citation omitted). As the Court previously determined, Proxi cannot enforce its contract with Curative against Doximity under an alter ego theory. Proxi argues that the Court should disregard the plain language of the Agreement and find that Doximity was a party to the Agreement because Doximity "sign[ed] the Letter of Intent, employ[ed] its executives to negotiate the [Agreement]," and filed a form with the Internal Revenue Service "identif[ying] itself as the 'seller' under the . . . Agreement." Reply 9. Proxi cites no legal authority in support of this argument, and the Court finds no basis for holding Doximity—a non-party to the Agreement—liable for breach of contract.

This conclusion is also fatal to Proxi's fraudulent inducement claim against Doximity. As Proxi itself argues, "Proxi's proposed Third Amended Complaint is clear—the fraudulent inducement claim is based upon justifiably relied upon fraudulent statements contained in the . . . Agreement." Reply 11-12; *see also id.* at 12 (reiterating that the fraudulent inducement claim is

9

not based on "statements made outside of the . . . Agreement."). Because Doximity was not a party to the Agreement and cannot be held liable as Curative's alter ego, allowing Proxi to amend to add either a breach of contract or fraudulent inducement claim against Doximity would be futile.

### c. Negligent Misrepresentation

Proxi also cannot maintain a claim against Doximity for negligent misrepresentation. The misrepresentation Proxi challenges is the statement that "Dr. P was currently on assignment and was scheduled to work through May 20, 2022." Third Am. Compl. ¶ 74. However, Proxi never connects Doximity to this statement. Instead, Proxi alleges that Curative's agent countersigned the notice that Dr. P's shifts were cancelled, Curative's Salesforce database indicated that Dr. P was scheduled to work, and the Agreement—between Proxi and Curative—stated that Dr. P was on assignment and scheduled to work. *See id.* ¶¶ 30, 37, 40. Proxi also relies on a best efforts and good faith clause contained in the Agreement. *Id.* ¶ 43. Nowhere does Proxi identify a misrepresentation made by Doximity.

In sum, because the proposed Third Amended Complaint fails to state a claim against Doximity upon which relief could be granted, the Court concludes that it would be futile to permit Proxi to amend its Complaint to add Doximity as a defendant.

### B. *Claims Against Curative*

The Court turns next to Proxi's claims against Curative. Curative argues that Proxi's Third Amended Complaint fails to state a claim for negligent misrepresentation, breach of contract, and fraudulent inducement. Resp. 10-23. The Court disagrees.

#### i. *Negligent Misrepresentation*

Under Texas law, a claim for negligent misrepresentation has four elements: (1) the defendant made a representation in the course of its business or in a transaction in which it had a

10

pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Gen. Elec. Cap. Corp. v. Posey*, 415 F.3d 391, 395-96 (5th Cir. 2005) (quoting *Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc.*, 88 F.3d 347, 357 (5th Cir. 1996)). Curative argues that Proxi does not adequately allege the fourth element, justifiable reliance, and that, regardless, Proxi's claim is barred by the economic loss rule. Resp. 10, 13.

According to Curative, Proxi could not have justifiably relied on any alleged misrepresentations because the Agreement contains disclaimer of reliance clauses. Those clauses disclaim reliance on statements "other than those embodied in this Agreement." Resp. 11 (quoting Agreement ¶ 7.9); *see also id.* at 12 (quoting Agreement ¶ 7.10). As further support for this argument, Curative points to a merger clause, which states that the Agreement "supersedes all previous understandings and agreements between the parties" and that the parties "have not relied on any representation . . . except those set out in this Agreement." Resp. 12 (emphasis omitted) (quoting Agreement ¶ 7.14). But Proxi's claims are based at least in part on alleged misrepresentations contained in the Agreement. Specifically, Proxi challenges the statement in the Agreement that Dr. P "is currently on assignment[] and is scheduled to work through May 20th, 2022." Reply 14 (quoting Agreement ¶ 1.4(g)); *see also* Third Am. Compl. ¶ 74. Therefore, to the extent Proxi relies on statements made in the Agreement, the disclaimers of reliance and merger clause do not preclude justifiable reliance.

Next, Curative argues that Proxi could not have justifiably relied on any statement about Dr. P's current schedule because the Agreement provides that Curative made no warranty or guarantee regarding its invoicing system and that Proxi assumed all risk from the process without

exception. Resp. 13 (quoting Agreement ¶ 1.4(g)). But this argument, which focuses on a provision governing billing for Dr. P's work, ignores the content of Proxi's negligent misrepresentation claim. Proxi claims that Curative misrepresented that Dr. P was scheduled to work and that Proxi paid the amount of money it did in reliance on the representation that Dr. P was scheduled. At the pleadings stage, these allegations suffice.

Finally, Curative contends that the economic loss rule bars this tort claim. *Id.* at 13-14. The economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 177-78 (5th Cir. 2016) (quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007)). The economic loss rule does not bar Proxi's negligent misrepresentation claim at this stage because Proxi pleads that claim and its breach of contract claims in the alternative, as it is permitted to do. *Austin Filter Sys., Inc. v. Belt Constr., Inc.*, No. 3:20-CV-3176-S, 2022 WL 378196, at *4 (N.D. Tex. Feb. 8, 2022) (citing FED. R. CIV. P. 8(d)(2)-(3)). "While the economic loss rule might prohibit [Proxi] from recovering damages for both contract and tort claims based on the same alleged conduct, it does not prevent [Proxi] from *pleading* both contract and tort claims as alternative theories of recovery." *Id.* As such, the Court will permit Proxi to amend its Complaint to assert a negligent misrepresentation claim against Curative.

*ii. Breach of Contract*

Proxi brings two breach of contract claims against Curative. In Count 2, Proxi claims that Curative breached the Agreement by not providing Proxi with a contract in which Dr. P was contracted to be scheduled through May 20, 2022, and by not using its best efforts and good faith in carrying out the terms of the Agreement. Third Am. Compl. ¶¶ 79-85. In Count 4, Proxi claims that Curative breached the Agreement by refusing to convey a dentistry executive search to Proxi

12

and by not using its best efforts and good faith in carrying out the terms of the Agreement. *Id.* ¶¶ 94-101. Under Texas law, a breach of contract claim has four elements: (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citation omitted). Curative argues that Proxi fails to allege a breach, does not plead recoverable damages with respect to the breach alleged in Count 4, and cannot rely on allegations regarding the best efforts and good faith clause to plead an actionable breach. Resp. 15.

As to Count 2, Curative argues that Proxi cannot plead breach because the Agreement does not promise to convey a contract for Dr. P's shifts, performance was rendered impossible when Dr. P's shifts were cancelled, and Proxi's disclaimer of reliance bars its claim. Resp. 15-17. According to Proxi, Curative represented in the Agreement that Dr. P was "currently on assignment" and "scheduled to work through May 20th, 2022." Third Am. Compl. ¶ 42 (quoting Agreement ¶ 1.4(g)). And Curative agreed to transfer certain assets to Proxi, including customer contracts. *Id.* ¶ 40. Proxi reviewed those contracts for purposes of determining assignability, meaning Proxi was aware of the specific contracts to be transferred under the Agreement.[5] Agreement, Ex. B 53. However, after the Agreement was executed, Curative allegedly did "not provid[e] Proxi with a contract wherein Dr. P was contracted to be scheduled through and including May 20, 2022." Third Am. Compl. ¶ 83. At this stage, these allegations state a claim for breach of contract without resort to outside representations or information. Finally, the Court does not find

---

[5] Curative's argument that Exhibit B supports its argument misses the mark. *See* Resp. 16-17. Proxi alleges that it would not have known that the contract related to Dr. P had changed because Curative did not tell Proxi about the cancellation or update its database to reflect the cancellation. Third Am. Compl. ¶¶ 31, 37. Resolving any doubts in favor of Proxi, these allegations demonstrate that a review of the contract would not have revealed the issue.

Curative's impossibility argument compelling. Dr. P's shifts allegedly were cancelled prior to execution of the Agreement, in which Curative represented that Dr. P was scheduled to work.

As to Count 4, Curative argues that Proxi fails to state a claim for breach of contract because Proxi disclaimed reliance on outside representations and acknowledged its receipt of and satisfaction with all transferred contracts. Resp. 17. The Agreement provides that Curative would sell to Proxi "the Business[,] which shall be comprised of the Assets of the Business as set forth in this Agreement and its Schedules and Exhibits." Agreement ¶ 1.2(a). "The Assets," in turn, are defined as "the assets described and listed in Schedule 1." *Id.* ¶ 1.1(g). Schedule 1 "explicitly provides for all executive searches within the dentistry service line." Third Am. Compl. ¶ 99; *see also* Agreement, Schedule 1 49-50. Proxi alleges that Curative breached that portion of the Agreement by withholding a specific dental executive search. Third Am. Compl. ¶ 98. Contrary to Curative's argument, Proxi does not rely on outside representations to make out its allegations regarding the breach. And the fact that Proxi reviewed the contracts it was being transferred has no bearing on whether it can state a claim for breach based on a search that was both not transferred and, allegedly, hidden from Proxi.

Curative further argues that Count 4 fails because Proxi's alleged damages are neither directly traceable to the breach nor foreseeable. Resp. 18. Proxi alleges that due to the alleged breach, it lost "the $15,000 retainer fee it would have been owed as well as the $20,000 placement fee." Third Am. Compl. ¶ 100. At this stage, the Court finds that Proxi adequately states a claim for foreseeable damages caused by Curative's alleged breach.

Finally, Curative argues that Proxi cannot premise a breach of contract claim on the Agreement's best efforts and good faith clause. Resp. 20. Proxi's allegations regarding this clause serve only as additional grounds for the breach of contract claims in Counts 2 and 4. *See* Third

14

Am. Compl. ¶¶ 83, 101. Because the Court has already determined that it would not be futile to allow Proxi to amend Counts 2 and 4, the Court declines to consider the best efforts and good faith clause allegations at this time.

### iii. Fraudulent Inducement

Under Texas law, fraudulent inducement has five elements: (1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that the other party should act on it, (4) that the other party relied on, and (5) that caused injury. *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018) (citation omitted). According to Curative, it would be futile to allow Proxi to amend its Complaint to add a fraudulent inducement claim because the disclaimer of reliance provisions bar any argument for justifiable reliance, Proxi does not adequately allege foreseeable and traceable damages, and the Third Amended Complaint impermissibly relies on group pleading. Resp. 21.

Curative acknowledges that Proxi's fraudulent inducement claim is based on a representation in the Agreement but argues that the "claim implicates reliance on outside information." *Id.* The Court disagrees. Proxi alleges that, in the Agreement, Curative promised to "transfer [its] complete dentistry service line to Proxi, including all executive dentistry searches and documents pertaining to those searches." Third Am. Compl. ¶ 87. "Proxi relied on the terms of the . . . Agreement, including the representation that [Curative was] selling to Proxi [its] entire dentistry service line . . . and entered into the . . . Agreement." *Id.* ¶ 91. These allegations satisfy the reliance element without looking to representations made outside of the Agreement; therefore, the disclaimer of reliance provisions do not bar Proxi's claim.

15

Again, Curative argues that the damages allegedly resulting from the failure to transfer the executive search were neither traceable nor foreseeable. Resp. 22. As stated above, the Court rejects this argument at this stage.

Finally, Curative argues that Proxi impermissibly engages in group pleading and "fails to identify specific statements made by specific speakers in" the Third Amended Complaint. *Id.* at 23. "[T]he material misrepresentation that forms the basis of the fraudulent inducement claim . . . was made in the . . . Agreement." Reply 23. The Agreement is between Proxi and Curative, and Curative's Chief Executive Officer signed the Agreement. *See* Third Am. Compl. ¶ 87; *see generally* Agreement. Thus, the Court concludes that Proxi plausibly alleges that Curative made the statement at issue.

In sum, "[u]nder the low threshold by which [the Court] evaluate[s] a dismissal under Rule 12(b)(6) and resolving any doubt in favor of [Proxi], [the Court] find[s] that [Proxi] adduced facts in support of its claim that would entitle it to relief" against Curative. *Stripling*, 234 F.3d at 873. Therefore, amendment of Proxi's claims against Curative is not futile, and the Court will permit Proxi to file an amended complaint.

## IV. CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Proxi's Motion for Leave to File Its Third Amended Complaint [ECF No. 31]. The Court **GRANTS** Proxi leave to amend its Complaint only to add the factual allegations and causes of action against Curative that are included in the proposed Third Amended Complaint, which the Court has determined are sufficient to survive a Rule 12(b)(6) challenge. The Court does not grant Proxi leave to amend to assert any additional factual allegations or causes of action against Curative that are not included in the proposed Third Amended Complaint. The Court **DENIES** Proxi leave to amend its

Complaint to add claims against Doximity. Proxi must file its revised Third Amended Complaint by no later than **March 11, 2024**.

    **SO ORDERED.**

    SIGNED February 26, 2024.

                                                   **KAREN GREN SCHOLER**
                                                   **UNITED STATES DISTRICT JUDGE**